## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GS HOLISTIC, LLC,                                    Case No. 3:23-cv-02040-JGC

      Plaintiff,

  v.

EXPRESS SMOKETOWN, INC.
d/b/a SMOKETOWN and
MOHAMMED ALMANIFI,

      Defendants.

## ORDER

This is a claim for trademark infringement and false designation of origin under the Lanham Act. 15 U.S.C. §§ 1114(1), 1125(a).

Plaintiff GS Holistic ("GS") is a Delaware limited liability company with its principal place of business in Los Angeles, California. (Doc. 1, PgID. 2). GS owns the trademarks at issue in this case. (*Id.* at PgID. 3). GS markets and sells products using those trademarks. (*Id.* at PgID. 2).

Defendant Express Smoketown ("Smoketown") is an Ohio limited liability company with a retail store in Bowling Green, Ohio. (*Id.*; Doc. 12-1, PgID. 64). There Smoketown allegedly sold counterfeit products bearing imitations of GS's trademarks. (Doc. 1, PgID. 6–7). Defendant Mohammed Al-Manifi, the owner of Smoketown until January 2024, allegedly directed or participated in these sales of counterfeit products. (*Id.* at PgID. 7; Doc. 12-1, PgID. 65).

Pending is Al-Manifi's motion to dismiss GS's complaint under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). (Doc. 12). GS responded. (Doc. 13). Al-Manifi did not file a reply.

1

For the reasons that follow, I grant Al-Manifi's motion.

## Background

GS has marketed and sold products under a set of "Stündenglass" trademarks since 2020. (Doc. 1, PgID. 2–3).[1] These products include glass infusers and related accessories. (*Id.*). GS alleges that its Stündenglass-branded products "are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS." (*Id.* at PgID. 4). GS also claims that it "has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand." (*Id.*). As a result, "consumers are willing to pay higher prices for genuine Stündenglass products." (*Id.* at PgID. 5).

GS alleges that Smoketown previously sold at Al-Manifi's direction and continues to sell counterfeit Stündenglass products. (*Id.* at 6–7). These products bear unauthorized imitations of "one or more" of the Stündenglass trademarks. (*Id.* at 6). GS asserts that its investigator purchased such a counterfeit glass infuser from Smoketown in July 2023. (*Id.* at 6–7). These counterfeit Stündenglass products are allegedly "made of substantially inferior materials and inferior technology as compared to genuine Stündenglass brand products." (*Id.* at PgID. 8).

GS claims that Smoketown's sale of counterfeit Stündenglass products is likely to confuse and deceive consumers. (*Id.*). GS also asserts that Smoketown and Al-Manifi's "acts are willful with the deliberate intent to trade on the goodwill of the Stündenglass Marks." (*Id.*). Smoketown and Al-Manifi are thereby damaging the Stündenglass trademarks' "valuable reputation and goodwill," as well as "divert[ing] potential sales of [GS]'s glass infusers to Smoketown." (*Id.* at PgID. 8–9).

---

[1] Specifically, GS owns Stündenglass trademarks with U.S. Trademark Registration Numbers 6,174,291; 6,174,292; and 6,633,884. (Doc. 1, PgID. 3).

GS claims that Smoketown and Al-Manifi's conduct violates the Lanham Act's prohibitions against trademark infringement, 15 U.S.C. § 1114, and false designation of origin, 15 U.S.C. § 1125. (*Id.* at PgID. 10–12). GS seeks damages, costs, and disgorgement of profits or restitution, as well as an injunction prohibiting the sale of unauthorized Stündenglass products and requiring the destruction of any such products and related material in Smoketown's or Al-Manifi's possession. (*Id.* at PgID. 12–14).

After filing its complaint, GS filed two motions for an extension of time to perfect service of the complaint on Smoketown and Al-Manifi. (Doc. 5; Doc. 6). I granted both extensions, but after the second, I ordered GS's counsel to submit an affidavit providing additional detail regarding the attempts at service. (Doc. 7). In that affidavit, GS's counsel stated that service on Al-Manifi occurred at his North Carolina address on February 20, 2024. (Doc. 10, PgID. 55). GS's counsel filed the process server's associated return of service. (Doc. 9).

GS's counsel further stated in his affidavit, however, that he had asked the process server to serve Al-Manifi a second time "on behalf of the corporation" as Smoketown's registered agent. (Doc. 10, PgID. 55). As of March 15, 2024, GS's counsel was unaware of whether the process server properly served Smoketown. (*Id.*). And on March 19, GS filed a third motion for an extension of time to perfect service, (Doc. 11), which I granted that same day.

A week later, Al-Manifi filed his pro se motion to dismiss GS's complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). (Doc. 12). Al-Manifi argues Rule 12(b)(5) warrants dismissal because he never "received the Summons, or copy of the Complaint." (Doc 12-1, PgID. 66). Al-Manifi asserts that GS "notified the business, but failed to serve [him], or new ownership via the registered agent, or [the] mailing address in North Carolina." (*Id.*). In support of his Rule 12(b)(6) argument, Al-Manifi points to other courts across

the country that, facing similar complaints from GS, have taken issue with the sufficiency of those complaints' allegations, as well as the methods through which GS has prosecuted its claims. (Doc. 12-1, PgID. 66–67).

As I further discuss below, I conclude that GS's complaint fails to state a claim against Al-Manifi. I therefore reach no decision regarding whether service of the complaint on Al-Manifi was proper.[2]

### Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), I decide whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). This statement must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

I "must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). But "bare assertions . . . [that] amount to nothing more than a 'formulaic recitation of the elements'" of a claim are insufficient. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

### Discussion

---

[2] Al-Manifi's motion to dismiss indicates that he is proceeding pro se. (Doc. 12, PgID. 61). Al-Manifi therefore cannot represent Smoketown before me. *See Lea v. Tracy Langston Ford, Inc.*, No. 19-5706, 2019 WL 9171095, at *2 (6th Cir. Dec. 30, 2019) ("A corporation, partnership, or association may appear in federal courts only through licensed counsel and not through the pro se representation of an officer, agent, or shareholder."). As a result, I reach no decision in this order regarding GS's complaint as against Smoketown, including whether GS has properly served Smoketown or whether GS has properly stated a claim against Smoketown.

GS argues that a corporate officer may be personally liable for the corporation's violations of the Lanham Act. (Doc. 13, PgID. 76). Another court in this Circuit recently described the standard for such liability:

> [T]he general rule is that an officer of a corporation may be personally liable for the corporation's infringement without piercing the corporate veil. An officer must do more than merely control corporate affairs. The officer must personally take part in the infringing activity or direct others to do so in order to be liable. In such a case, the officer is liable as an actor, not merely as an agent or owner of the corporation.

*Top Tobacco, L.P. v. Abdelshahed*, 439 F. Supp. 3d 992, 1006 (M.D. Tenn. 2020), *vacated in part on other grounds by* 2020 WL 5366523 (M.D. Tenn. Sept. 8, 2020).

Courts in this district and across the country echo this standard. *See, e.g.*, *MRI Software, LLC. v. Lynx Sys., Inc.*, No. 12-cv-1082, 2016 WL 375101, at *8 (N.D. Ohio Feb. 1, 2016) (Boyko, J.) ("[A]t least with respect to trademark infringement claims, an officer may be individually liable for infringement if he takes part in the infringing activity or directs others to do so, regardless of whether he was acting in his official capacity at the time."); *Luxottica Grp. S.p.A. v. BK Deals, LLC*, No. 23-cv-21792, 2024 WL 46835, at *2 (S.D. Fla. Jan. 3, 2024) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." (quoting *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994))); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 155 (E.D.N.Y. 2016) ("[U]nder the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active[,] conscious force [behind the defendant corporation's] infringement." (quoting *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 367 (S.D.N.Y. 2014))).

GS's complaint fails to state a claim against Al-Manifi under this standard because it alleges no specific facts regarding Al-Manifi's role in Smoketown's allegedly infringing conduct. Indeed, all I can reasonably infer from GS's complaint about Al-Manifi's corporate position is that he was an owner of the Smoketown store. (*See* Doc. 1, PgID. 5 ("Unfortunately, the current U.S. marketplace is saturated with counterfeit Stündenglass products – just like those MOHAMMED ALMANIFI, through his store, SMOKETOWN, is offering for sale.")). GS's remaining allegations specifically relating to Al-Manifi are bare, conclusory assertions amounting to nothing more than a "formulaic recitation" of the elements of GS's claim. (*See, e.g.*, *id.* at PgID. 7 ("MOHAMMED ALMANIFI authorized, directed, and/or participated in SMOKETOWN's offer for sale, in commerce, of the Counterfeit Goods. MOHAMMED ALMANIFI's acts were a moving, active, and conscious force behind SMOKETOWN's infringement of the Stündenglass Trademarks.")).

GS does not further allege, for example, that Al-Manifi himself sold the glass infuser to GS's investigator, that Al-Manifi played a role in product selection or inventory management, or that Al-Manifi supervised employees with those responsibilities. Of course, at this stage of the litigation when no discovery has yet occurred, GS may lack detailed information about Smoketown's operations and Al-Manifi's role within them. But GS must still make some factual allegation at least supporting a reasonable inference of Al-Manifi's specific involvement in the infringing conduct. *See MRI Software*, 2016 WL 375101, at *7–9 (rejecting the defendant's motion to dismiss trademark infringement claims predicated on the defendant's personal liability after noting that "the First Amended Complaint alleges [the defendant] was the main actor in negotiating [the relevant contractual] terms, carrying out the contractual obligations and in violating Plaintiff's rights").

This is a critical but not particularly demanding requirement. For example, in a Colorado case involving a very similar complaint from GS, the court denied the motion to dismiss of the defendant store and its defendant owner. *GS Holistic, LLC v. Vaportoke Inc.*, No. 23-cv-01513, 2024 WL 2864149, at *8 (D. Colo. Apr. 30, 2024), *report and recommendation adopted*, 2024 WL 2863611 (D. Colo. May 24, 2024). In the amended complaint in that case, GS alleged that the defendant owner was a "tobacco shop goods" merchant with "specialized knowledge in the tobacco shop industry." *Id.* at *2. The court then noted:

> These are the only non-boilerplate allegations in the entire complaint—that [the defendant], through his stores, sold two counterfeit Stündenglass gravity infusers, and because [the defendant] is a smoke shop merchant, and the price was near $400 rather than $600, substantially lower than the price of an authentic Stündenglass infuser, he knew or should have known that the infusers were counterfeit. The rest of the seventy-one paragraph Amended Complaint is essentially boilerplate of the sort one would see in any trademark infringement case, without any supporting non-conclusory factual allegations . . . .

*Id.* at *3. But the *Vaportoke* court concluded that even those few "non-boilerplate allegations" sufficed to deny the defendant's motion to dismiss.

In many respects, the complaint here is nearly identical to the amended complaint in *Vaportoke*. Crucially, however, here the complaint lacks any allegation regarding Al-Manifi's knowledge of or experience regarding the "tobacco shop industry" or any other relevant line of business. That absence distinguishes this case from *Vaportoke* and is fatal to GS's complaint against Al-Manifi.

GS nevertheless argues that "a lack of participation in the infringement will not insulate a corporate officer from liability where he had the right and ability to supervise the infringing activity and also had a direct financial interest in such activities." (Doc. 13, PgID. 76 (quoting *Days Inn Worldwide, Inc. v. Adrian Motel Co.*, No. 07–13523, 2009 WL 3199882, at *12 (E.D. Mich. Sept. 30, 2009) (internal quotations omitted))). GS seems to be arguing, in other words,

that alleging a defendant corporate officer's ownership of the infringing corporation suffices to allege that officer's involvement in the infringing conduct. I find this argument unpersuasive.

First, the decisions on which the *Days Inn* court relied for its rule were copyright cases, not trademark cases. *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162–63 (2d Cir. 1971) (analyzing vicarious liability under the Copyright Act); *L & L White Metal Casting Corp. v. Cornell Metal Specialties Corp.*, 353 F. Supp. 1170, 1175 (E.D.N.Y. 1972) (analyzing the effect of innocent infringement on copyright liability). But neither the *Days Inn* court nor GS points to authority suggesting that the law of copyright liability also sets the metes and bounds of trademark liability.

Second, the *Days Inn* court's own application of its rule also does not lend support to the argument that a corporate officer's alleged ownership of an infringing corporation by itself suffices as an allegation of that officer's involvement in the infringing activity. Considering the plaintiff's motion for summary judgment on this issue, among the facts the *Days Inn* court found weighing in the plaintiff's favor was that "[the defendant] was one of only two shareholders/members of [the relevant businesses]." *Days Inn*, 2009 WL 3199882, at *12. But among the facts the court found weighing in favor of the defendant corporate officer was his affidavit in part stating that he "never personally owned or operated the [infringing business] (as he simply was part owner of the corporate entity which owned [that infringing business])." *Id.* The defendant's affidavit also stated that "a third party was paid to handle day-to-day operations." *Id.* The court then denied the plaintiff's summary-judgment motion, concluding that "there is a genuine issue of material fact whether [the defendant] had the right and ability to supervise the infringing activity and/or participated in that activity." *Id.*

8

The implication of the *Days Inn* decision is that the "right and ability to supervise the infringing activity," which might trigger a corporate officer's personal liability for that activity, must generally consist of something more than an ownership right. *See also Hagemeyer Chem. Co. v. Insect-O-Lite Co.*, 291 F.2d 696, 699 (6th Cir. 1961) ("Officers, directors or shareholders of a corporation are not personally liable for wrongful or tortious conduct of the corporation or its other agents, unless there can be found some active or passive participation in such wrongful conduct by such persons."); *Luxottica*, 2024 WL 46835, at *2 (finding that the plaintiff sufficiently "alleges more than threadbare allegations" where the plaintiff alleged that the defendant "president, manager, and member . . . was directly involved in approving the purchase and sale of the counterfeit merchandise" (internal quotations omitted)); *Cartier v. Aaron Faber Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007) ("As for [a second defendant corporate officer], however, Plaintiffs have failed to adequate [sic] demonstrate that he should be held individually liable. Although [that defendant] was a 50 percent owner [of the infringing corporation], his deposition does not indicate that he had an active role in the infringing activities . . . .").[3]

Because GS fails to allege any non-conclusory facts regarding Al-Manifi's personal involvement in Smoketown's alleged violations of the Lanham Act, I conclude that GS's complaint fails to state a claim against Al-Manifi.[4]

Finally, I am aware that GS has filed at least four other very similar complaints in this district, three of which GS voluntarily dismissed.[5] And in his motion, Al-Manifi draws my

---

[3] An exception to this general rule may exist in situations where the defendant corporate officer is a company's "sole shareholder and employee." *See Innovation Ventures*, 176 F. Supp. 3d at 155. In such situations, the defendant corporate officer "must have approved of the infringing act." *Id.* Here, however, GS does not allege that Al-Manifi was Smoketown's sole owner and employee.

[4] As I noted above, *supra* note 2, I reach no decision in this order regarding whether GS has properly served Smoketown or whether GS has properly stated a claim against Smoketown.

[5] These cases are *GS Holistic, LLC v. Horizon Tobacco Island Inc.*, No. 23-cv-01928 (ongoing); *GS Holistic, LLC v. Smokablez 105 LLC*, No. 23-cv-02179 (voluntarily dismissed on Dec. 14, 2023); *GS Holistic, LLC v. Moes Smokes*

attention to other very similar complaints from GS in courts across the country. (Doc 12-1, PgID. 66–67). One court dismissed GS's complaints in several cases after GS's counsel repeatedly failed to follow the local rules. *GS Holistic, LLC v. Kinder Combs 7 LLC*, No. 22-cv-1206, 2023 WL 5104701, at *1 (M.D. Fla. Aug. 9, 2023). In another case, GS filed a motion to dismiss its claim voluntarily because "the correct cause of action . . . was not trademark infringement, but rather patent infringement." *GS Holistic, LLC v. Brother Pastor LLC*, No. 22-cv-2179, 2023 WL 4082027, at *4 (M.D. Fla. June 20, 2023). The court in that case also sanctioned GS's counsel for suing "without any evidence of trademark infringement" and for failing to "change course after receiving further information that its factual contentions and legal claims were not viable." *Id.* at *5. I trust that in this case, all parties will heed our Local Rules, efficiently prosecute any plausible claims they wish to bring, and appropriately abandon any claims that are or become implausible. I also warn all parties that a failure to do so may result in sanctions.

### Conclusion

For the foregoing reasons, I find that GS's complaint fails to state a claim against Al-Manifi.

It is, therefore, ORDERED THAT:

1. Defendant Al-Manifi's motion to dismiss (Doc. 12) be, and the same hereby is, granted; and

2. On or before July 15, 2024, Plaintiff GS's counsel shall notify the Court as to their intentions relative to continuing to proceed against the remaining Defendant Smoketown. If Plaintiff's counsel intends to continue to effectuate

---

*Inc.*, No. 23-cv-02041 (voluntarily dismissed on Dec. 20, 2023); and *GS Holistic, LLC v. R&A Smokeshop, LLC*, No. 23-cv-01931 (voluntarily dismissed on Apr. 5, 2024).

service of process, they shall undertake to do so promptly and, in any event, to

have successfully perfected service on or before August 15, 2024.

SO ORDERED.

DATE: 6/28/2024                                        _/s/ James G. Carr_

                                                       Sr. U.S. District Judge